# Lockwood *v.* Lockwood.

### In the Court below,

GIDEON LOCKWOOD, and JOHN LOCKWOOD, *Petitioners ;*
ALBERT LOCKWOOD, *Respondent.*

THE petition stated, that *John Lockwood,* on the 4th of May, 1764, mortgaged to *Nathaniel Marston,* for the sum of 100*l.* New-York currency, payable in one year, 20 acres of land ; and on the 13th of February, 1784, said *John,* by his will, devised to his wife the use and improvement of all his estate, real and personal, for her life, with power to sell, if she should have need of more than the use, remainder to his children, of whom the petitioners were two. The wife of the testator died on the 15th of January, 1801, not having disposed of said right of redemption. No distribution of the estate of said *John* was ever made among his devisees and legatees. In the year 1786, *Thaddeus Bennet* levied an execution upon the interest in the equity of redemption of *Michael Lockwood,* one of the devisees, and conveyed the same to the petitioners. *Marston* died in October, 1778, and devised the mortgaged land to his executor, who, on the 12th of December, 1798, conveyed the same to *Albert Lockwood,* the respondent. The prayer of the petition was, that the respondent should account, and that the petitioner might redeem. Petition dated the 9th of July, 1802.

The respondent, in his answer, admitted the mortgage to *Marston,* the will of *John Lockwood,* and the conveyance to himself, and denied the levy of *Bennet's* execution. He also stated, that *Marston* recovered judgment, in an action of disseizin, in November, 1767,

*A. devises a mortgaged estate to B. for life, with power to sell, remainder to C. —fifteen years undisturbed possession, by the mortgagee, during the life of B. will preclude a redemption by B.*

against *John Lockwood*, and that this estate had not been inventoried as *John Lockwood's*, though a final settlement had been made of his estate ; that on the 16th of June, 1785, the respondent went into possession of the premises, under a lease from *Marston*, and continued in possession as aforesaid, till December, 1788, and then purchased the same, and had ever since been in possession. He also averred, that the mortgage money had not been paid. The Court found the facts above selected from the answer to be true, and sufficient, and the facts in the petition, not traversed in the answer, to be true, and decreed, that the petitioners take nothing by their petition.

*Edwards*, (of New-Haven) and *R. M. Sherman*, for the plaintiffs in error.

Though *Albert Lockwood* has been in possession of this land more than fifteen years, yet the rule adopted, in analogy to the statute of limitations, does not apply to this case. Here, the wife had the use of this estate during her life, with *power to sell it*. *Albert*, therefore, cannot have gained a title by possession, against the petitioners ; as they could not claim by a legal right, or have a legal process to enforce their claim.

The petitioners had only a contingent remainder, or an executory devise. The statute, to which this rule is analogous, is intended to operate only in those cases, where the party can make his entry, or " sue out to effect his right or title." (*a*)

Even were the remainder vested, the tenant in re-

(*a*) *Stat.* 254.

mainder would not be barred. But here, the petition-
ers had no interest, during the life of the widow ;—it was
a mere possibility, not devisable, nor transferable, and
not such an interest, as it has often been determined,
as would give a person a right to redeem.

If we admit this to be a contingent remainder, still,
as it is not a vested interest, we have been guilty of no
latches. It is like the case of an estate given to one,
after he arrives to 21 years of age. Were this a vested
remainder the devisees might redeem, but would not be
obliged to redeem, during the life of the tenant for life ;
for by redeeming, they could not obtain the present en-
joyment of the property, and the tenant for life could re-
deem out of their hands.

It has been suggested, that the remainder must vest
somewhere, and that the estate, which was not in the
widow, must be in the *heirs* of *John Lockwood*. But,
if an interest did vest by descent, in the heirs of *John
Lockwood*, this would not prevent them from redeeming,
except so far as they received property by descent.

If the widow is disseized of the estate set out to her as
dower, for fifteen years, the heirs will not be barred, by
her neglecting to recover her dower. Suppose she
had been endowed of this mortgaged estate, as by the
decisions of the Superior Court she might have been,
had there been no will, and the mortgagee had ejected
her, after which she had lived fifteen years, would this
have prevented the heirs from redeeming ? Surely, the
devisees are not to be placed in a worse situation than
the heirs.

P p

LOCKWOOD
v.
LOCKWOOD.

*Ingersoll,* and *Daggett,* for the defendant in error.

This Court, in the case of *Smith* v. *Skinner,* (*b*) decided, that a rule similar to the statute of limitations was to be adopted in chancery. The Superior Court had adopted the same principle. (*c*) Where more than fifteen years have elapsed, and there has been no acknowledgment of the mortgagee, nor any act of his evincing the estate to be a mortgage, and the mortgagor cannot show himself to be within the exceptions allowed by the courts of chancery in Great-Britain, no redemption can be had. In 1764, this land was mortgaged; nothing more is heard of it till 1784, when it is claimed to have been devised. In 1785, the respondent went into possession under a lease from *Marston;* in 1787, he purchased it of *Marston,* and received a conveyance, claiming it as his own. It is not pretended, that he claimed as heir to *John Lockwood.* He stands, then, on the same ground, that *Marston* himself would have stood on; and the petitioners, not having been minors, or femes covert, or beyond seas, could not have redeemed against *Marston.* The statute of limitations having begun to run, always continued to run.

But it is said, that it was so devised by *John Lockwood,* that they could not get into possession. Were this so, it could not vary the rights of *Marston,* or his assignees. But was there no person who had a right to redeem? This is not pretended. The widow might have redeemed, and our claim is not to be varied by her neglect.

(*b*) Ante 124.
(*c*) 1 *Root* 485, *Crittendon* v. *Brainerd.*

But the petitioners themselves had power to redeem, during this time. Their interest was not a bare possibility, or even a contingent remainder, but a fee vested in them, liable, however, to be defeated, for the support of the widow.

BY THE COURT,

The judgment was affirmed.

1804.

LOCKWOOD
*v.*
LOCKWOOD.

Day.
1d 299
60 512

## Bishop *v.* Selleck.

### In the Court below,

JACOB BISHOP, HENRY WEED, and MARY his wife, in her right, DEODATE WEED, and SARAH his wife, in her right, MOSES MATHER, 2d, and SALLY his wife, in her right, EBENEZER BISHOP, ABRAHAM HAWLEY, ISAAC HAWLEY, CHARLES SELLECK, RHENA BISHOP, LAVINA BISHOP, ISAAC BISHOP, ABRAHAM BISHOP, and HANNAH BISHOP, *Plaintiffs ;* JESSE SELLECK, *Defendant.*

THIS was an action of ejectment, for sixteen acres of land in Stamford.

The defendant made a special plea, in which the whole case was fully stated, and admitted, on the part of the plaintiffs, by a demurrer. On the 9th of May, 1757, *John Bates* made his will, by which, after giving to his two eldest sons a small tract of land, he devised to his other sons, and to his daughters, of whom *Sarah Selleck* was one, the rest of his estate, real and personal, to be divided among them in certain specified proportions. He then made provision for the payment of his daughters' proportions out of his personal estate, so far as it

A devise of lands to A. for life, remainder to her *heirs,* and their assigns, forever, vests a fee-simple in A.